## CIRCUIT COURT OF FAIRFAX COUNTY

Toombs

    v.

First Dulles
Condominium, L.P., et al.

February 25, 1997

Case No. L159685

BY JUDGE DENNIS J. SMITH

Mr. Toombs, an employee of A. C. & R. Insulation, brought this action for injuries he sustained while performing construction work at the Crescent Condominium at Worldgate, a complex owned by First Dulles Condominium ("First Dulles"). First Dulles filed a Plea in Bar asserting that under the Workers' Compensation Act, an employee cannot bring a common law action for negligence against his employer as the employee's remedy lies exclusively under the Workers' Compensation Act. The matter was heard by the Court on October 30, 1997, and taken under advisement.

It is undisputed that A. C. & R. Insulation, an independent contractor hired by First Dulles, is the employer of Mr. Toombs. However, the question before the Court is whether First Dulles is a "statutory employer" of Mr. Toombs. An employer contracting with independent contractors may become a "statutory employer" for purposes of workers' compensation actions if the work performed by the independent contractor is "part of the owner's trade, business, or occupation." *Bassett Furniture Industries, Inc. v. McReynolds*, 216 Va. 897, 902 (1976). Whether the work is such a part depends on the facts and circumstances of the case. *See id.* at 900-901.

Courts determine an employer is the "statutory employer" of an employee if, in that employer's business, the activity conducted by the employee is normally carried on through employees rather than independent contractors. *Johnson v. Jefferson National Bank*, 244 Va. 482, 485 (1992). Frequency and regularity of performance are factors to be considered in

determining whether work is "normally carried on through employees." *Bassett Furniture Industries, supra* at 902. Mere capacity to perform, standing alone, is not determinative; nor is performance which is a *de minimis* part of the total business operation. *See id.*

First Dulles concedes that the Limited Partnership has never been in the construction business, that it holds no contractor's license in its name, and that it did not directly acquire building permits for construction. In addition, deposition testimony indicates that First Dulles employees serve only as maintenance or clean-up workers. By contrast, Charles E. Smith Construction, Inc. ("CESC") holds a contractor's license and has acquired all relevant permits. It has been shown that CESC salaried employees conducted all supervision of the construction work in question and that CESC employees negotiated the subcontract with A. C. & R. Insulation.

First Dulles asserts, however, that paragraph 3 of the First Dulles Limited Partnership Agreement provides, *inter alia*, that the business of the partnership "shall consist of acquiring . . . certain real property . . . and developing thereon a residential apartment project and related facilities, and owning, managing, leasing, and operating the same, or establishing such project as a condominium under the laws of the Commonwealth of Virginia . . ." and that the Construction Management Agreement provides for ultimate liability responsibility for employees on the owner and not the Construction Manager. Neither the First Dulles Limited Partnership Agreement, nor the Construction Management Agreement, nor the Agreement between A. C. & R. Insulation and First Dulles, nor all three together can convert First Dulles to a "statutory employer," however, if the work being done by the plaintiff was not such as would ordinarily be done by employees of the defendant First Dulles. In discussing the statutory employer doctrine, the Supreme Court of Virginia has stated that "the chief purpose of enactments like the Virginia Statute . . . is to 'protect the employees of subcontractors who are not financially responsible and to prevent employers from relieving themselves of liability (for compensation) by doing through independent contractors what they would otherwise do through direct employees.' [Citation omitted.] . . . . The statute was not intended to relieve employers from liability for their own negligence which causes injury to the employees of independent contractors engaged in the performance of work for employers outside the scope of the latter's occupation." *Basset, supra*, at 902. Even if First Dulles was authorized to conduct such business by the terms of existing agreements, there is insufficient evidence

to persuade the Court that the plaintiff in this case was performing work ordinarily carried out by First Dulles employees.

For these reasons, First Dulles' Plea in Bar is denied.